IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ELIZABETH WELLS,
      Petitioner,

vs.                             Case No.:  3:03cv490/RS/EMT

JAMES R. McDONOUGH,[1]
      Respondent.
_____/

## ORDER AND
## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer, including relevant portions of the state court record (Doc. 7). Petitioner replied (Doc. 11).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D.Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that an evidentiary hearing is not required for disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.        BACKGROUND AND PROCEDURAL HISTORY

Petitioner does not dispute the procedural history as set forth by Respondent in its answer to the petition (*see* Doc. 7 at 2-4).  On May 7, 2001, the State of Florida charged Petitioner with one count of aggravated battery with a firearm (Count One) and one count of possession of a firearm by

_____

[1]James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

a convicted felon (Count Two) (Doc. 7 at 2, Ex. A).  Following a jury trial, Petitioner was found

guilty as charged, with special findings by the jury on Count One that Petitioner actually possessed

and discharged a firearm during the commission of the aggravated battery, and a special finding on

Count Two that Petitioner actually possessed a firearm during the commission of the offense (Doc.

7, Exs. B, C).  The court sentenced Petitioner to twenty (20) years of incarceration on Count One,

with a twenty-year minimum mandatory term, and ten (10) years of incarceration on Count Two,

with a three-year minimum mandatory term, to run concurrently with the sentence imposed as to

Count One (Doc. 7, Ex. D).

> Petitioner raised a single issue on direct appeal:

> Whether improper comments of the prosecutor in closing argument constituted
> fundamental error, depriving defendant of her right under Section 9, Article I,
> Constitution of the State of Florida, and the Fifth Amendment to the Constitution of
> the United States.

(Doc. 7, Ex. F).  The appellate court affirmed Petitioner's convictions and sentences per curiam

without opinion on August 23, 2002, with the mandate issuing September 10, 2002 (Doc. 7, Exs.

H, I).  Wells v. State, 826 So.2d 291 (Fla. 1st DCA Aug. 23, 2002) (Table).

> On January 23, 2003, Petitioner filed a motion for post-conviction relief pursuant to Florida

Rule of Criminal Procedure 3.850 (Doc. 7, Ex. J).  In the motion Petitioner raised the following

grounds:

> Ground One:   Defendant's sentence was imposed in violation of
> Constitutional Amendments 5 and 14 where F.S. § 775.087 (1999) is
> unconstitutional.

> Ground Two:  Defendant received ineffective assistance of counsel for failing
> to investigate and call witness.

> Ground Three:  Ineffective assistance of counsel for failing to preserve
> prosecutorial misconduct for appellate review.

(id.).  The post-conviction court summarily denied the motion (Doc. 7, Ex. K).  The state appellate

court affirmed the decision per curiam without opinion, with the mandate issuing September 15,

2003 (Doc. 7, Exs. O, R).  Wells v. State, 853 So.2d 414 (Fla. 1st  DCA July 16, 2003) (Table).

Petitioner filed the instant federal habeas petition on October 21, 2003, in which she raises the following claims:

> Ground one:   Prosecutor Made Improper Comments Depriving Petitioner of Constitutional 5 Amendment Right.
>
> Ground two:  Sentence Imposed in Violation of the U.S. Constitution Amendments 5 and 14.
>
> Ground three:  Ineffective Assistance of Counsel for Failing to Investigate and Call Witnesses, U.S. Constitutional Amend. 6.
>
> Ground four:  Ineffective Assistance of Counsel for Failing to Preserve Prosecutorial Misconduct for Appellate Review, U.S. Const. Amed. [sic] 6.

(Doc. 1 at 5-6).  Respondent concedes that the instant petition is timely (Doc. 7 at 6).

II.   TRIAL EVIDENCE

Resolution of Petitioner's claims requires thorough consideration of the evidence adduced at trial.   Essentially, the case involved a domestic dispute between Petitioner and her live-in boyfriend, Alfred Riley.  Petitioner's trial consisted of testimony from the victim of the aggravated battery and an emergency room nurse, three pictures of the victim's injuries, and Petitioner's testimony (Doc. 7, Ex. B).  A summary of this evidence follows.

Mr. Riley testified that on December 24, 1999, he arrived home at approximately 5:00 p.m. (*id*. at 31).  Petitioner and her friend were at the house when he arrived (*id*.).  Petitioner prepared Mr. Riley's supper, and after he ate it, he fell asleep in a chair while Petitioner took her friend home (*id*. at 32-33).  Mr. Riley was awakened by glass shattering over his head, and when he awoke he saw Petitioner picking up glass (*id*. at 33-34).  Mr. Riley joked that he would "put her across my lap," and Petitioner laughed and said, "I bet you would." (*id*. at 35).  The two of them "played" on the couch, and then Petitioner crawled to the front door and removed a gun from under a rug behind the door (*id*. at 36-37).  Petitioner said, "Yeah, you thought I didn't know -- know you had it hid over there." (*id*. at 37).  Mr. Riley responded, "I sure didn't." (*id*.).  Petitioner said, "Yeah, you think I don't know how to shoot it." (*id*.).  Mr. Riley responded, "I don't know how to shoot it myself." (*id*.).  Then Petitioner then went outdoors and shot the gun twice (*id*.).

Petitioner and Mr. Riley sat in the house for a few moments, and then drove to a convenience store to get Alka Seltzer (*id*. at 37-38).   During the ride home, Petitioner placed the Alka Seltzer in a cup of water (*id*. at 38).   When they arrived at the house, Petitioner got out of the truck and walked to the driver's side, leaving the cup of Alka Seltzer on the seat (*id*. at 38-39).   Mr. Riley turned around in the driver's seat and knocked over the cup (*id*.).   When he told Petitioner he had knocked it over, Petitioner, who was standing at the open driver's door of the truck and was pointing the gun upwards, said, "Yeah, I told you I'll kick -- well, I was gonna kill you" (*id*. at 39-40).   Petitioner then lowered the gun and shot Mr. Riley in the arm (*id*. at 40-41).   Mr. Riley said, "Lord, you done shot me." (*id*. at 40).   Petitioner asked him how many times the gun could shoot, and Mr. Riley told her six times (*id*.).   Petitioner said, "Well, I got three more bullets in here." (*id*.).   Mr. Riley then laid over the front seat, and Petitioner shot again, but she missed him (*id*. at 40, 44).

Mr. Riley left the truck and went into the house to call the police, but Petitioner took the telephone (*id*. at 45).   Petitioner then pointed the gun at her head and said she was going to kill herself (*id*.).   Mr. Riley told her, "Well, you crazier than I is [sic].   I wouldn't kill myself.   I wouldn't care what happened." (*id*.).   Petitioner then told Mr. Riley to tell the police that someone on the street shot him, but Mr. Riley refused (*id*. at 46).   Mr. Riley and Petitioner went to a neighbor's house to call the police (*id*. at 46-47).   The neighbor refused to let Mr. Riley call the police, but offered to call the paramedics (*id*. at 46).   Mr. Riley declined the offer and said he could drive himself to the hospital (*id*.).

Mr. Riley and Petitioner then drove to the hospital (*id*. at 47).   Petitioner again asked Mr. Riley if he would lie to the police and tell them that a stranger shot him (*id*. at 46-47), but Mr. Riley again refused (*id*.).   Petitioner left the hospital (*id*. at 47).   Mr. Riley received a tetanus shot and a prescription, but the bullet remained in his leg (*id*. at 48).   Three pictures of Mr. Riley's injuries were admitted into evidence (*id*. at 41-43).

On cross-examination, Mr. Riley admitted he had been consuming alcohol on the day he was shot (*id*. at 50).   He denied that he and Petitioner were fighting when they were on the couch (*id*. at 51).   Indeed, he denied that they had ever fought or argued (*id*. at 51-53).   Mr. Riley stated that he was five feet eleven inches (5' 11") tall and weighed 172 pounds (*id*. at 55).

The prosecutor announced to the jury that the parties stipulated to the fact that Petitioner had previously been convicted of dealing in stolen property, a felony (*id*. at 57-58). The State rested its case (*id*. at 57).

Petitioner was the only defense witness. She testified that Mr. Riley was drunk when he came home at approximately 5:30 or 6:00 p.m. on the night of the shooting (*id*. at 62). At approximately 7:00 p.m., Petitioner asked Mr. Riley to accompany her to take a friend home (*id*. at 63). Mr. Riley said he did not want to go because he was drunk, so Petitioner took the friend home (*id*.). Petitioner said when she returned home, Mr. Riley was asleep in a chair (*id*. at 64). A glass was sitting on a table next to the chair, and the glass fell and woke him (*id*.). Petitioner asked him to take her to the store, and they went to the store (*id*. at 64-65). Petitioner made her purchase, got back into the truck, and began to drink Alka Seltzer out of a plastic cup, when Mr. Riley pulled the gun and hit her in the face with it, chipping her teeth (*id*. at 65, 83). They argued during the ride home (*id*. at 66).

When Petitioner attempted to exit the truck upon their arrival at home, Mr. Riley hit her and they began to "tussle" (*id*.). During the fight, Mr. Riley had the gun in his hand and threatened to kill her (*id*. at 67, 73). Petitioner fell out of the driver's side of the truck and "wound up" with the gun in her hand and shot Mr. Riley (*id*. at 66-67). Petitioner then dropped the gun (*id*. at 68). Petitioner said she would get help, but Mr. Riley told her not to because he bought the gun "off the street" (*id*. at 68). Mr. Riley said he would tell police that someone shot him in the parking lot of a liquor store (*id.*).

Petitioner denied that the two of them went into the house or that she put the gun to her head, but she confirmed that they went to a neighbor's house and to the hospital (*id*.). Petitioner testified that when hospital personnel asked Mr. Riley who shot him, he said, "Yeah, that B shot me" (*id*. at 69). She also testified that Mr. Riley was so drunk he could not tell the nurse his name (*id*.). Petitioner then left the hospital (*id*. at 68-69). She later returned, but then left again (*id*. at 71).

Petitioner testified that at the time of the incident she was five feet three and a half inches (5' 3 ½") tall and weighed 189 pounds (*id.* at 71-72). When counsel asked her whether she believed Mr. Riley was going to kill her when he threatened to do so, Petitioner responded, "I don't know. He drank every day of his life." (*id*. at 73). Counsel asked Petitioner whether Mr. Riley ever hit her

or physically abused her, and Petitioner responded that one night he came home late and poured moonshine on her while she was lying down (*id*. at 62).

On cross-examination, Petitioner testified that Mr. Riley never hit her, but that he pushed her two or three times (*id*. at 75).  When the prosecutor asked Petitioner whether she threw the glass that shattered over Mr. Riley's head when he was asleep in the chair, Petitioner denied that she threw the glass, but said she bumped the table on which the glass was sitting, and the glass fell off (*id*. at 75-76).  Petitioner denied that the two of them "tussled" or were ever on the couch (*id*. at 77).  She also denied that she crawled on the floor to the front door to get the gun and testified that the only time she was on the floor was that morning, when Mr. Riley came home and found her lying on the carpet in the livingroom (*id*. at 78-79).  He asked her why she was still lying down, and she responded that it was still early (*id*. at 79).  He then started pulling her leg and, as a result, she received carpet burns on her leg (*id*.).  She went to the doctor for treatment of the carpet burns (*id*.).

Additionally, Petitioner admitted that she intended to shoot the gun when she fell out of the truck while the two of them were fighting, but she denied aiming it at Mr. Riley (*id*. at 84-85).  She also admitted that she then fired the gun two or three more times (*id*. at 85).  Petitioner testified that at the time she shot the gun, Mr. Riley was attempting to attack her (*id*. at 85-86).

After the defense rested, the State recalled Mr. Riley on rebuttal.  Mr. Riley denied that he pulled Petitioner across the carpet (*id*. at 91-92).  He also denied that he hit Petitioner with the gun, that he referred to Petitioner as "B" or a bitch at the hospital, or that he was so drunk at the hospital that he was not able to provide his name (*id*. at 93-95).

The State also presented testimony from Karen Carraway, an emergency room nurse (*id*. at 108).  She testified that although she could smell alcohol on Mr. Riley, he was able to tell her his name, age, date of birth, allergies, and the last time he had a tetanus shot (*id*. at 110).  She stated she had no trouble communicating with him (*id*. at 111).  When she asked him who shot him, he turned to Petitioner and said, "She did." (*id*.).  Nurse Carraway said she did not recall that Mr. Riley cursed when he identified Petitioner (*id*.).

III.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254 now provides:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[2]  The appropriate test in habeas cases was described by Justice O'Connor as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and –-except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-1523).  The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

determined by the Supreme Court of the United States."  Under the "contrary to"
clause, a federal habeas court may grant the writ if the state court arrives at a
conclusion opposite to that reached by this court on a question of law or if the state
court decides a case differently than this Court has on a set of materially
indistinguishable facts.  Under the "unreasonable application" clause, a federal
habeas court may grant the writ if the state court identifies the correct governing
legal principle from this Court's decisions but unreasonably applies that principle to
the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d

125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any

issue raised in a federal habeas petition upon which there has been an adjudication on the merits in

a formal state court proceeding.  *See* Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002);

Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002).  First, the court must ascertain the

controlling legal principles that are clearly established by the Supreme Court at the time of the state

court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court

must determine whether the state court adjudication was contrary to the clearly established Supreme

Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause

in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the

relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261

F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2310, 152 L.Ed.2d 1065

(2002) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule

that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies

'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not

fit within the 'contrary to' clause even if the federal court might have reached a different result

relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at

404-06).  If the state court applied the correct Supreme Court precedent, and the United States

Supreme Court, faced with materially indistinguishable facts, has not reached a decision different

from the decision reached by the state court in the petitioner's case, the case does not fit within the

"contrary to" clause, and the federal habeas court must proceed to the third step and determine

whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261

F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are <u>not</u> substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting <u>Williams</u>, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" <u>Bell v. Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (quoting <u>Williams</u>, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." <u>Williams</u>, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. <u>Van Poyck v. Fla. Dep't of Corrections</u>, 290 F.3d 1318, 1322 n. 4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." Section 2254(e)(1); *see* <u>Miller-El v. Cockrell,</u> 537 U.S. 322,

123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." (dictum)); <u>Fugate</u>, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); <u>Parker v. Head</u>, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* <u>Crawford v. Head</u>, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).   Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence.  *See* <u>Callahan v. Campbell</u>, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

## III.   EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate

---

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
           (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); Picard, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  Id. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's

claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365-66.   Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004). The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id.

Prior to Duncan, the Eleventh Circuit broadly interpreted the "fair presentation" requirement. See, e.g., Watson v. Dugger, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court had failed to follow state law which required proof of all elements of the crime, and argued in federal court that this was a due process violation); Mattox v. Dugger, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position).  However, after Duncan, the Eleventh Circuit has taken a more restrictive approach.  For example, in Zeigler v. Crosby, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The court

---

[4]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. O'Sullivan, 526 U.S. at 839-40, 848. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S.Ct. 2546, 2555 and n.1, 115 L.Ed.2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467,

497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).   Lack of counsel or ignorance of available procedures is not enough to establish cause.   <u>Tower</u>, 7 F.3d at 210.   To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."   <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995).   "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."   <u>Schlup</u>, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.   To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

A.   <u>Ground one:  Prosecutor Made Improper Comments Depriving Petitioner of Constitutional 5 Amendment Right.</u>

Petitioner alleges that during closing argument, the prosecutor:  (1) misled the jury to believe that the test for determining Petitioner's guilt was which witness(es) were more believable, rather than whether the State presented proof of guilt beyond a reasonable doubt; (2) improperly bolstered the testimony of Mr. Riley and expressed personal belief as to his veracity; and (3) misstated the law regarding self defense (Doc. 1 at 5).

Respondent concedes that Petitioner exhausted this claim by presenting it on direct appeal (Doc. 7 at 13).

1.   Clearly Established Supreme Court Law

A prosecutor's improper statements to the jury do not alone justify habeas relief but must be evaluated in light of the entire trial record.   <u>United States v. Young</u>, 470 U.S. 1, 11-12, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985).   "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"

Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).  The comments therefore must have impacted the jury's ability to fairly judge the evidence at trial.  Young, 470 U.S. at 12.  Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied:  (1) the prosecutor's comments must have been improper, and (2) the comments must have rendered the trial fundamentally unfair.  See United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citations omitted); Brooks v. Kemp, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds*, 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), *reinstated*, 809 F.2d 700 (11th Cir.) (en banc), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1987).  If a reviewing court is confident that, absent the improper remarks, there is no reasonable probability that the outcome of the trial would have been different, the trial cannot be said to have been fundamentally unfair. *See* Brooks, 762 F.2d at 1402; Tucker v. Kemp, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc), *cert. denied*, 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987).

In applying this standard, a reviewing court should not assess prosecutorial comments in isolation, "shorn of their context"; rather, the court must examine the entire context of the trial proceeding.  Cargill v. Turpin, 120 F.3d 1366, 1379 (11th Cir. 1997) (citing Brooks, 762 F.2d at 1413).  "In this regard, isolated or ambiguous or unintentional remarks must be viewed with lenity." *Id.* (internal quotation and citation omitted).  Furthermore, the court should evaluate whether "defense counsel's closing argument . . . ameliorate[d] the damage done to the defense by the prosecutor's [statements]." *Id.* (citations omitted).  Moreover, the court must consider the trial court's instructions to the jury, as they "may remedy effects of improper comments." *Id.* (internal quotation and citation omitted).  Finally, the court must consider the evidence of guilt, as "[a] court need not determine whether specific arguments are proper or improper if, taken as a whole, they would not require relief." *Id.* (internal quotation and citation omitted).  Clearly, where the evidence against the accused is very strong, in order to merit relief, prosecutorial misconduct would have to be even more egregious and pervasive than in cases where the evidence is less compelling, for example, where the defendant has a viable defense.

2.      Federal Review of State Court Decision

Petitioner raised the claims of prosecutorial misconduct in the direct appeal of her conviction (Doc. 7, Ex. F at 9).  The state court affirmed the conviction without written opinion (Doc. 7, Ex. H).  Although the state appellate court's affirmance without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that the decision is unreasonable.  *See* Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326-27 (11th Cir. 2000); Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000); Hannon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997).  This court will separately address each of Petitioner's sub-claims.

> a.       Prosecutor misled the jury to believe that the test for determining Petitioner's guilt was which witness(es) were more believable, rather than whether the State presented proof of guilt beyond a reasonable doubt.

In reviewing this claim, the court must evaluate the prosecutor's comments in full context, including the parties' closing arguments and the court's instructions to the jury.  Defense counsel began his closing argument by arguing that the issue of the case was whether Petitioner acted in self-defense and momentarily possessed the gun in an act of necessity (*id*. at 116).  Defense counsel argued:  "She has explained to you her version of what occurred there that day, and you've heard a version from both sides, and you're going to have to do some evaluation of which of these makes more sense and which of these witnesses to believe." (*id*. at 117).  Defense counsel argued that Mr. Riley's testimony did not make sense and was not credible, and counsel referred to specific parts of Mr. Riley's testimony to illustrate his point (*id*. at 118-19).  Counsel stated, "So I would submit that that's a strong suggestion that his version of events there aren't true and what actually happened is what she says . . ." (*id*. at 119).  Defense counsel concluded by arguing:

> So I would submit to you that that [a summary of Petitioner's testimony] is the most reasonable construction you can put on the facts that you've heard in this case, and that those circumstances would give you grounds both to decide that the shooting was in self-defense and to decide that the brief possession of that firearm, even though she's a convicted felon, was justified under the elements of the necessity defense that you've been -- you will be charged with.

(*id*. at 122).

The prosecutor argued the following:

Basically, there are only two people that know what happened that night: it's Elizabeth Wells and Alfred Riley. So your job, as jurors, is to decide who you're going to believe. I would agree with Mr. McCrackin when he says you've heard two versions of what happened, and they are the only people that can tell you what happened that night. . . . So you've got to decide what is the truth about what happened that night. . . .

And the judge is going to tell you that you're the ones that will make that decision. It's up to you to decide what evidence or whose testimony to believe in this case. . . .
. . . .

Now -- and you have heard two different stories here. And I don't know if Mr. McCrackin's going to say, well, there's a conflict here. You've got two different stories there. That's a conflict in the evidence and that equals reasonable doubt. Well, that's not the way it works. Because there are going to be two stories in every trial, every jury trial. There's going to be two stories, and the jurors have to sort it out and determine who's telling the truth. And the judge is going to tell you, you can believe or disbelieve all or any part of the testimony of a witness, including the defendant. So just because you've got two stories, that doesn't mean you have an automatic conflict, because you have to resolve that conflict by deciding who to believe.

And what reason do you have not to believe Mr. Riley? None. And Mr. Riley gave you a lot of details about what happened that night. Now, she denies a lot of the things that Mr. Riley told you about what happened. . . .
. . . .

. . . Now, he may not think that there's any reason for her to shoot him, but it's her intent that we're looking at, not what he thinks her intent was. She told me -- I asked her, You intended to pull the trigger on that gun? Yes. In fact, she says she shot it two or three times. Mr. Riley says she shot it twice out there. But clearly, her intent was to fire that gun and to shoot him, which is exactly what she did.

Now they're saying, well, there was no motivation for it. Well, I don't have to prove what her motive was, but I think you can read between the lines or infer from what was going on that night that she was plenty aggravated with him about the fact that he wouldn't get up out of the chair and drive her to the store, that he's always doing for other people, won't do for her. . . .

And not only that, what provocation does it take for some people to shoot other people? Very little in some cases, and I would say this is one of them. . . . She doesn't deny she shot him. And, in fact, she can't deny that if she's going to claim

self-defense because you have to say, yeah, I did it. I did it intentionally, but I want you to excuse my conduct.

    . . . So let's talk about that, self-defense. Well, first of all, let me just tell you this about self-defense. If you don't believe her, you don't even need to talk about self-defense. Because she's telling you that he attacked her and all these things happened. Well, if you don't believe that, you don't even have to go there. Self-defense is off the table. But let's just talk about it. I'll give you reasons why you shouldn't believe her testimony, but if you want to -- if you want to look at the self-defense, first of all, these are not the actions of someone in fear for her life. . . . . . . .

    Supposing you want to believe, just for the sake of argument, that they had some kind of fight at the Circle K. When they get back to the house, she got out of the truck. She could have left then. She didn't have to shoot him. But she claims, of course, that there was a struggle in the truck and that she fell out on the driver's side, got the gun away from him. She's laying on the ground and she fires up and shoots him. Well, that doesn't fit the facts of this case because you will have those pictures. I mean, you saw Mr. Riley. The shot came at an angle. It came in his left arm, came out the left forearm, and came down and hit him in the right thigh, right about here. Now, if she's down on the ground, how does that happen if he's sitting in the driver's seat? And she said he was sitting in the driver's seat. So that doesn't fit. And she claims she fired again.

    Now, my -- another opportunity for her to leave. . . .

    The use of deadly force shouldn't be the first option that you consider. Every law-abiding citizen has the right to use deadly force, but that's not what we're talking about here. This is not the use of deadly force. This is an angry woman who is going to -- like I said, the drink got spilled and that was the final straw. And she said, I told you I was gonna kill you. And then she fired the gun at him and hit him once. And then she's going, Well, how many bullets does this gun hold? Six. Well, then I've got three left. And, see, she's doing the math. . . . .

    Now, there is another defense, the self -- in addition -- the self defense goes to the aggravated battery. . . . But what about the possession of firearm by convicted felon? They're claiming that was a necessity, that she -- because there's no defense to possession of firearm by convicted felon unless -- unless you claim necessity . . .

    . . . Well, I think you can tell from the evidence in this case that she -- she had -- she was hanging on to that gun for a long time. . . . it wasn't a momentary

possession.  I mean, if at any point along the line you find that she was not -- she did not have the necessity to possess that gun, then she's guilty of possession of firearm by convicted felon.

So -- well, basically what they're going to tell you is -- the judge is going to tell you that six things must be present before you can excuse her possession. . . . . . . .

. . . I would ask you to find her guilty as charged.

(*id*. at 122-38).

Defense counsel then argued in rebuttal:

. . . First, she [the prosecutor] indicated that if -- correctly, that if you disbelieve part of someone's testimony, you're entitled to disbelieve all of it if you want.  That's exactly -- without saying that to you, that's exactly what I was suggesting to you is the case with Mr. Riley's testimony.  If you don't believe him and you don't believe that he's leveling with you when he says . . . then I beg to differ with Ms. Ross that there's not a necessity or that there isn't a fear of imminent bodily -- serious bodily harm.

He's threatening to shoot her and he's overtly threatening to kill her.  Under those circumstances, she's entitled to shoot him.  Under those circumstances, . . . the necessity defense entitles her to possess that gun. . . . . . . .

Now, you need to keep in mind when you evaluate all of this, as we've already discussed, that you evaluate this through the lens of beyond a reasonable doubt.  There is disputed evidence about the circumstances of how this occurred and whether it was self-defense or not, whether necessity applies.  You have to decide to convict or not, and to convict, you have to find beyond a reasonable doubt that she wasn't justified in defending herself and that there was no necessity.  If you have any -- the self-defense charge itself includes a passage you'll hear the judge read where it basically says if you have any reasonable doubt about whether it was justified, you -- your duty is to acquit.

So the burden of proof is on the government here, and it's a very high burden of proof, beyond a reasonable doubt.  And you can't convict based on speculation or based on sort of a what is more likely than not occurred out there that night.  You've got to be convinced beyond a reasonable doubt that she was not justified in doing what she did under those circumstances.  And the dispute itself, if you have a hard time figuring -- if the victim's story is inconsistent in itself, the dispute itself can be a reasonable doubt for you.  Now, obviously, if you want to clearly believe one side

over the other, that could settle it, but if you've got anything hanging in the balance on that, that can be reasonable doubt.

So I would suggest to you that the evidence you have before you does create a question as to whether she was reasonably justified under those circumstances in both possessing this firearm, which she had to do to take from him, and in shooting him under those circumstances.  So I'm asking you to return a verdict of not guilty on both counts.

(*id*. at 138-43).

The trial judge then instructed the jury as follows:

. . . Before you can find the defendant guilty of aggravated battery, the State must prove the following two elements beyond a reasonable doubt. . . .
. . . .

If you find that in the course of committing aggravated battery, that it was proven beyond a reasonable doubt that the defendant actually possessed a firearm during the commission of the aggravated battery, you should indicate that finding.

If you find that in the course of committing the aggravated battery that it was proven beyond a reasonable doubt that the defendant discharged a firearm during the commission of the aggravated battery, you should indicate that finding.

The defendant is also charged with possession of a firearm by a convicted felon.  Before you can find the defendant guilty of possession of a firearm by a convicted felon, the State must prove the following two elements beyond a reasonable doubt . . .
. . . .

. . . If you find that in the course of committing possession of a firearm by a convicted felon that it was proved beyond a reasonable doubt that during the commission thereof the defendant actually possessed a firearm, you should indicate that finding.
. . . .

An issue in this case is whether the defendant acted in self-defense. . . .
. . . .

. . . If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether or not the defendant was justified in the use of force likely to cause death or great bodily harm, you should find the defendant not guilty.  However, if from the evidence you are convinced that the defendant was not

justified in the use of force likely to cause death or great bodily harm, you should find her guilty if all the elements of the charge have been proved.
. . . .

If you find from the evidence that the defendant committed possession of a firearm by a convicted felon out of necessity, you should find the defendant not guilty.  However, if you find the defendant did not commit possession of a firearm by a convicted felon out of necessity, you should find the defendant guilty if all the elements of the charge have been proved.

The defendant has entered a plea of not guilty. This means you must presume or believe the defendant is innocent.  The presumption stays with the defendant as to each material allegation in the information through each stage of the trial unless it has been overcome by evidence to the exclusion of and beyond a reasonable doubt.

To overcome the defendant's presumption of innocence, the State has the burden of proving the crime with which the defendant is charged was committed and the defendant is the person who committed the crime.  The defendant is not required to present evidence or prove anything.

Whenever the words reasonable doubt are used, you must consider the following:  A reasonable doubt is not a mere possible doubt, a speculative, imaginary, or forced doubt.  Such a doubt must not influence you to return a verdict of not guilty if you have an abiding conviction of guilt.  On the other hand, if after carefully considering, comparing, and weighing all the evidence there is not an abiding conviction of guilt, or, if having a conviction, it is one which is not stable but one which wavers and vacillates, then the charge is not proved beyond every reasonable doubt, and you must find the defendant not guilty because the doubt is reasonable.

It is to the evidence introduced in this trial and to it alone that you are to look for that proof.  A reasonable doubt as to the guilt of the defendant may arise from the evidence, conflict in the evidence, or lack of evidence.  If you have a reasonable doubt, you should find the defendant not guilty.  If you have no reasonable doubt, you should find the defendant guilty.

It is up to you to decide what evidence is reliable.  You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict.  You may find some of the evidence not reliable or less reliable than other evidence.  You should consider how the witnesses acted as well as what they said.

Some things you should consider are, did the witness seem to have an opportunity to see and know the things about which the witness testified? Did the witness seem to have an accurate memory? Was the witness honest and straightforward in answering the attorneys' questions? Did the witness have some interest in how the case should be decided? Did the witness' testimony agree with the other testimony and other evidence in the case? Was it proved that the witness had been convicted of a crime?

You may rely upon your own conclusion about the witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness. . . . .

The defendant in this case has become a witness. You should apply the same rules to consideration of her testimony that you apply to the testimony of the other witnesses.

These are some general rules that apply to your discussion. You must follow these rules in order to return a lawful verdict. You must follow the law as it is set out in these instructions.
. . . .

In closing, let me remind you that it is important that you follow the law spelled out in these instructions in deciding your verdict. There are no other laws that apply to this case.

(*id*. at 143-60).

In the instant case, the prosecutor did not mislead the jury to believe that the test for determining Petitioner's guilt was which witness was more believable, rather than whether the State presented proof of guilt beyond a reasonable doubt. Petitioner admitted she shot the victim, that she intended to shoot him, and that she was a convicted felon at the time of the shooting. Thus, the only issues for the jury to decide were whether Petitioner was justified in shooting the victim and whether she possessed the gun out of necessity. The prosecutor argued that in determining those issues, the jury was required to determine which evidence, including witness testimony, was reliable and believable. This was not an improper comment.

Furthermore, the trial court remedied any effect of the alleged improper comments by clearly instructing the jury on the following points: (1) to convict Petitioner, the State was required to prove the elements of each crime beyond a reasonable doubt, (2) Petitioner was not required to present

evidence or prove anything, (3) if the jury had a reasonable doubt as to whether Petitioner was justified in the use of force, they should find her not guilty, (4) a reasonable doubt as to guilt could arise from the evidence, conflict in the evidence, or lack of evidence, and (5) it was the jury's duty to decide what evidence was reliable.   Thus, Petitioner failed to show that the prosecutor's comments were improper, or that the comments rendered the trial fundamentally unfair.

> b.      Prosecutor improperly bolstered the testimony of Mr. Riley
> and expressed personal belief as to his veracity.

Petitioner next claims that the prosecutor improperly bolstered the testimony of the victim by expressing her personal belief as to his veracity.

Attempts to bolster a witness by vouching for his credibility are improper "if the jury could reasonably believe that the prosecutor indicated a personal belief in the witness' credibility." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citing United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983)).  A jury could believe that the prosecutor personally believed in the witness' credibility "if the prosecutor either places the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity, or the prosecutor implicitly vouches for the witness' veracity by indicating that information not presented to the jury supports the testimony."  Id. (citation omitted).   Thus, the court must examine whether (1) the prosecutor explicitly personally assured the witness' credibility, or (2) the prosecutor implicitly vouched for the witness' credibility by implying that evidence not presented to the jury supports the witness' testimony.  United States v. Castro, 89 F.3d 1443, 1457 (11th Cir. 1996) (citing Sims, 719 F.2d at 377).

However, it should be noted that "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." United States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir. 1991).  Furthermore, when the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper.  United States v. Granville, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two Government witnesses, only pointed to matters in evidence: the

demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted).

In the instant case, after thorough review of the prosecutor's closing argument, this court has found no instance of improper bolstering.  The prosecutor began her closing argument by telling the jury that it was their province to decide "what evidence or who to believe in this case" (Doc. 7, Ex. B at 123).  The prosecutor stated, "We argue our respective positions, but ultimately, you will be the ones to make that decision." (*id*.).  The prosecutor then argued that Mr. Riley's testimony was more credible than Petitioner's and referred to evidence introduced at trial to support this contention, for example:  (1) Mr. Riley gave detailed testimony about the events that night, (2) his testimony "made sense" and Petitioner's did not, (3) Petitioner's actions were not consistent with her testimony, and (4) Mr. Riley's demeanor on the stand was not consistent with Petitioner's contention that he was a violent man.  The prosecutor's comments were not an explicit personal endorsement of Mr. Riley's credibility, nor did they include any references to evidence not before the jury. Therefore, Petitioner failed to show that the prosecutor's comments were improper.

c.       Prosecutor misstated the law regarding self defense.

Petitioner claims that the prosecutor misstated the law regarding self defense by telling the jury that if they did not believe Petitioner's testimony, there was no self-defense.   Petitioner contends this comment shifted the burden of proof to the defense.

The following is the full context of the prosecutor's comments regarding self-defense:

So let's talk about that, self-defense.  Well, first of all, let me just tell you this about self-defense.  If you don't believe her, you don't even need to talk about self-defense.   Because she's telling you that he attacked her and all these things happened.  Well, if you don't believe that, you don't even have to go there.  Self-defense is off the table.  But let's just talk about it.  I'll give you reasons why you shouldn't believe her testimony, but if you want to -- if you want to look at the self-defense, first of all, these are not the actions of someone in fear for her life.  Like I said, she had plenty of opportunities to leave.  And the judge is going to tell you that, you know you're -- before you resort to the use of deadly force, and that's exactly what we're talking about here -- when you shoot somebody with a gun, you're exerting deadly force.

The law will recognize certain circumstances where you're entitled to use deadly force against another person.  It's like meeting force with force.  If someone

is exerting deadly force against you, you can use deadly force against them to protect yourself, but certain things have to be present first. You have to do everything you can within your power to get yourself out of that situation without using the deadly force, and that's certainly not what happened here.

Supposing you want to believe, just for the sake of argument, that they had some kind of fight at the Circle K. When they get back to the house, she got out of the truck. She could have left then. She didn't have to shoot him. But she claims, of course, that there was a struggle in the truck and that she fell out on the driver's side, got the gun away from him. She's laying on the ground and she fires up and shoots him. Well, that doesn't fit the facts of this case because you will have those pictures. I mean, you saw Mr. Riley. The shot came in at an angle. It came in his left arm, came out the left forearm, and came down and hit him in the right thigh, right about here. Now, if she's down on the ground how does that happen if he's sitting in the driver's seat? And she said he was sitting in the driver's seat. So that doesn't fit. And she claims that she fired again.

Now, my -- another opportunity for her to leave. You know, if she's on the ground and he's still in the truck, she doesn't have to keep firing that gun at him. She can just get up and leave. It just didn't happen that way.

The use of deadly force shouldn't be the first option that you consider. Every law-abiding citizen has the right to use deadly force, but that's not what we're talking about here. This is not the use of deadly force. This is an angry woman who is going to -- like I said, the drink got spilled and that was the final straw. And she said, I told you I was gonna kill you. And then she fired the gun at him and hit him once. And then she's going, Well, how many bullets does this gun hold? Six. Well, then I've got three left. And, see, she's doing the math.

She fired two rounds at the house. She shot him one time. She had three bullets left in the gun, and she fired one more time. Mr. Riley then dodges, I mean, he falls over in the seat because he's afraid he's going to get shot in the head at that point. This is not -- these are not the actions of a woman in fear for her life. These are the actions of an angry woman.

And then after -- she claims that they didn't go back upstairs. Well, but my question to her was, Well, why didn't you go upstairs and use the phone at Mr. Riley's house? I don't know. Well, that -- because there's no answer because it just didn't happen that way. Mr. Riley said he went back up to call the police, and she's going, No, you're not calling the police. So he's going over to the neighbor's house. Nobody's going to let him use the phone. He has to drive himself to the hospital.

And she gets in the truck with him, and she's trying to convince him -- well, I forgot that one part in there where she put the gun to her head. At this point, you know, she's thinking, what can I do to stop this man from calling the police? So she puts the gun to her head and threatens to shoot herself. Well, you know, Mr. Riley says, Look, you know, I don't care what I did. I wouldn't be doing something like that. You're crazy. But she denies that that ever happened. She was desperate at that point. She's trying to stop him from calling the police.

So then they go to the hospital, and on the way to the hospital, she's -- or even before then, she's saying, Well, just tell them somebody drove by and shot you, you know. And he's going -- you know, he's saying, Look, I can't tell them that. They know that -- they're not going to believe it happened that way. And then when they get to the hospital, he's -- she's still trying to get him to say that and he's, Look, I'm not going to lie for you, and she finally gives up and leaves.

And she -- and, you know, now, Mr. Riley admitted he had been drinking that day, but she wants you to believe that he was so intoxicated. I guess that means he was violent, abusive, and whatever. But you saw Mr. Riley's demeanor on the stand and you saw how he is. And she's trying to make him out to be some kind of a violent person, but she herself could not even tell you what things had happened in the past that would make him that kind of a person. She could only allude to a couple of things.

Now, he denied that there had ever been any prior violence. Now, what he may consider an argument and what Mr. McCrackin may consider are possibly two different things. I mean, people don't agree about things. Maybe an argument for him means some kind of a fight. But they had -- you know, obviously had had a disagreement that night, and I would qualify it as an argument. Maybe Mr. Riley doesn't. But in any event, she wasn't justified in what -- in what she was doing that night.

(Doc. 7, Ex. B at 130-35). The prosecutor did not misstate the law by telling the jury that if they did not believe Petitioner's testimony, they did not need to consider the issue of self-defense. The only evidence supporting a self-defense theory was Petitioner's testimony. If the jury did not believe her testimony regarding her justification for shooting Mr. Riley, there would be no evidence that she was justified in using deadly force. In the absence of such evidence, the jury had no choice but to find beyond a reasonable doubt that Petitioner was not justified in defending herself.

Furthermore, the following rebuttal by defense counsel reinforced the correct legal standard and burden of proof regarding self-defense:

Now, you need to keep in mind when you evaluate all of this, as we've already discussed, that you evaluate this through the lens of beyond a reasonable doubt. There is disputed evidence about the circumstances of how this occurred and whether it was self-defense or not, whether necessity applies. You have to decide to convict or not, and to convict, you have to find beyond a reasonable doubt that she wasn't justified in defending herself and that there was no necessity. If you have any -- the self-defense charge itself includes a passage you'll hear the judge read where it basically says if you have any reasonable doubt about whether it was justified, you -- your duty is to acquit.

So the burden of proof is on the government here, and it's a very high burden of proof, beyond a reasonable doubt. And you can't convict based on speculation or based on sort of a what is more likely than not occurred out there that night. You've got to be convinced beyond a reasonable doubt that she was not justified in doing what she did under those circumstances. And the dispute itself, if you have a hard time figuring -- if the victim's story is inconsistent in itself, the dispute itself can be a reasonable doubt for you. Now, obviously, if you want to clearly believe one side over the other, that could settle it, but if you've got anything hanging in the balance on that, that can be reasonable doubt.

(Doc. 7, Ex. B at 141-42).

Moreover, after the parties' closing arguments, the correct legal standard was again reinforced by the trial court in the following jury instruction:

. . . If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether or not the defendant was justified in the use of force likely to cause death or great bodily harm, you should find the defendant not guilty. However, if from the evidence you are convinced that the defendant was not justified in the use of force likely to cause death or great bodily harm, you should find her guilty if all the elements of the charge have been proved.

(*id*. at 150). Therefore, Petitioner failed to show that the prosecutor misstated the law with regard to self-defense, or that the prosecutor's comments rendered the trial fundamentally unfair.

B.     Ground two:   Sentence Imposed in Violation of the U.S. Constitution Amendments 5 and 14.

Petitioner claims that she was sentenced under the "10/20/life" provision of Florida law, and this law violates the "single subject rule" and the separation of powers doctrine by removing the sentencing court's discretion (Doc. 1 at 5).

Respondent contends that Petitioner's claim is purely a matter of state law, as it involves the interpretation of state constitutional provisions; therefore, the claim is not cognizable on federal

habeas review (Doc. 7 at 30-31).   Furthermore, Petitioner failed to fairly present a federal claim to the state courts (*id*. at 28-30).   Respondent argues that although Petitioner challenged her "10/20/life" sentence in her Rule 3.850 motion, she argued that the state law violated the "single subject" provision of the Florida constitution (Article 3, Section 6) and the separation of powers provision of the Florida constitution (Article 2, Section 3) (*id*. at 29).   Thus, Petitioner failed to give the state courts an opportunity to determine a federal constitutional issue.

In reply, Petitioner asserts that the fact that she referenced "Constitutional Amendments 5 and 14" in Ground One of her Rule 3.850 motion put the state post-conviction court on notice of her federal claim (Doc. 11 at 4).

It is well established that federal habeas relief is available to correct only constitutional injury.   28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991); Wainwright v. Goode, 464 U.S. 78, 83-84, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983).   Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief.   *See* Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas relief, since no question of a constitutional nature is involved.") (quoting Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983)).   "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (citation omitted).   In the instant case, although Petitioner referenced the Fifth and Fourteenth Amendments in the statement of her claim, her claim involves only a state law issue, as she challenges the validity of a state statute under the state constitution.   Therefore, her claim is not cognizable in federal habeas.

     C.    <u>Ground three:  Ineffective Assistance of Counsel for Failing to Investigate and Call Witnesses, U.S. Constitutional Amend. 6.</u>

Petitioner claims that her counsel provided ineffective assistance by failing to investigate and call Dr. Boomguard as a witness at trial (Doc. 1 at 6).   Petitioner alleges she told counsel that during the morning of the day the shooting occurred, Mr. Riley dragged her across the floor, leaving carpet burns, and that she was treated for the burns by Dr. Boomguard at Sacred Heart Hospital (*id*.).   She

argues that Dr. Boomguard's testimony would have supported her self-defense theory because it would have shown that Mr. Riley had previously been violent toward her (*id*.).  Petitioner contends there is a reasonable probability that if the jury had heard Dr. Boomguard's testimony, they would have acquitted her (*id*.).

Respondent concedes that Petitioner exhausted this claim in her Rule 3.850 motion; however, Petitioner failed to show that the state court decision denying her claim was contrary to or an unreasonable application of Supreme Court law (Doc. 7 at 32-39).

      1.     Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687-88.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  If a petitioner fails to make a showing as to either performance or prejudice, she is not entitled to relief.  Strickland, 466 U.S. at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S.Ct. 2104, 158 L.Ed.2d 718 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." (citation omitted)).

"[C]ounsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary. . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland, 466 U.S. at 691; *see also* Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000); Holsomback v. White, 133 F.3d 1382, 1387 (11th Cir. 1998).  "In general, defense counsel renders ineffective assistance when [he] fails to investigate adequately the sole

strategy for a defense or to prepare evidence to support that defense."  Fortenberry v. Haley, 297 F.3d 1213, 1226 (11th Cir. 2002).  Counsel's duty to investigate "requires that counsel 'conduct a substantial investigation into any of his client's plausible lines of defense.'"  Id. (citation omitted).  No absolute duty exists to investigate particular facts or a certain line of defense.  Williamson, 221 F.3d at 1180; Chandler, 218 F.3d at 1317.  The mere existence of alternate strategies or approaches, even better ones, does not render counsel's strategy ineffective.  Chandler, 218 F.3d at 1314.  Counsel cannot be found incompetent "as long as the approach taken 'might be considered sound trial strategy.'"  Id. (quoting Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986)).  Petitioner bears the heavy burden of persuasion to disprove that counsel's performance was competent and reasonable by showing that no competent counsel would have chosen the course of action that his counsel in fact took.  Id. at 1314-15 & n.16.

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference.  Chandler, 218 F.3d at 1314 n.14 (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518-19 (11th Cir. 1995) (en banc)).  "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel."  Waters, 46 F.3d at 1514.  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[5]  Furthermore, counsel cannot be deemed ineffective for failing to call unavailable witnesses or for opting not to call witnesses with questionable credibility.  Williamson, 221 F.3d at 1181.

Indeed, the Strickland court recognized that "[e]ven the best criminal defense attorneys would not defend the same petitioner in the same way."  466 U.S. at 689.  Matters of trial strategy and tactics, unless plainly not within the bounds of reasonableness, and even if unsuccessful, do not constitute ineffective assistance.  Bell v. Evatt, 72 F.2d 421 (4th Cir. 1995).

Trying cases is no exact science.  And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an

---

[5]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

activity that calls for great precision or for a categorical approach.  When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate."  <u>Atkins v. Singletary</u>, 965 F. 2d 952, 958 (11th Cir. 1992).  And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy."  <u>Devier v. Zant</u>, 3 F. 3d 1445, 1450 (11th Cir. 1993).  Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances would have done so.

<u>Rogers</u>, 13 F.3d at 386; <u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish no competent counsel would have taken the action that his counsel did take).

However, not every strategic decision passes constitutional muster.  Whether a particular decision by counsel was a tactical one is a question of fact, <u>Hardwick v. Crosby</u>, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1367 (11th Cir. 1995); <u>Horton v. Zant</u>, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, <u>Hardwick</u> 320 F.3d at 1163; <u>Jackson</u>, 42 F.3d at 1367; <u>Horton</u>, 941 F.2d at 1462.  In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689.

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high.  <u>Wellington</u>, 314 F.3d at 1260.  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting <u>Strickland</u>, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome.  <u>Strickland</u>, 466 U.S. at 693-94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405-406.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694-95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.  Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695-96.

### 2.    Federal Review of State Court Decision

Petitioner raised this claim in her Rule 3.850 motion (*see* Doc. 7, Ex. J at 5-6).  In the state court's written decision denying her claim, the court analyzed whether Petitioner satisfied the Strickland standard (*id*. at 28-29).  Because the state court explicitly identified and applied the Strickland standard, and the state court did not reach a decision different from the Supreme Court in a case with indistinguishable facts, Petitioner cannot show the state court decision was "contrary to" Strickland.  Therefore, Petitioner is entitled to federal habeas relief only if she establishes the state court's denial of her claim was objectively unreasonable.

Initially, Petitioner does not allege that Dr. Boomguard was available to testify at trial. Furthermore, Petitioner's assertion of the content of Dr. Boomguard's potential testimony is purely speculative; she offers no factual support, for example, in the form of medical records, supporting

her allegation that he would have testified that he treated her for rug burns on the morning of the shooting.

Additionally, Petitioner has failed to establish a reasonable probability that the jury would have acquitted her if Dr. Boomguard had testified.  The jury heard Petitioner's version of the events that occurred on the day of the shooting through Petitioner's own testimony.  She testified that earlier that day at approximately 9:00 a.m., Mr. Riley came home and found her lying on the carpet in the livingroom (Doc. 7, Ex. B at 78-79).  He asked her why she was still lying down, and she responded that it was still early (*id*. at 79).  He then started pulling her leg and, as a result, she received carpet burns on her leg (*id*.).  She went to the doctor for treatment of the carpet burns (*id*.).

Even if Dr. Boomguard corroborated the fact that Petitioner suffered rug burns that morning, Petitioner has failed to establish a reasonable probability that this fact would have affected the jury's determination that Petitioner's use of deadly force against Mr. Riley that evening, more than eight hours later, was not justified.  Dr. Boomguard's testimony would not have affected the fact that Petitioner had an opportunity to avoid the difficulty with Mr. Riley by retreating from the truck when they arrived at the house or when she fell out of the truck with the gun in her hand while Mr. Riley was still in the truck.  As Petitioner failed to show that she suffered prejudice as a result of counsel's failure to call Dr. Boomguard as a trial witness, the state court decision denying her ineffective assistance of counsel claim was not unreasonable.

D.      Ground four:  Ineffective Assistance of Counsel for Failing to Preserve Prosecutorial Misconduct for Appellate Review, U.S. Const. Amed. [sic] 6.

As her final claim, Petitioner contends she received ineffective assistance of counsel because defense counsel failed to object to the prosecutor's allegedly improper comments specified in Ground One *supra* (Doc. 1 at 6; Doc. 11 at 6).  Petitioner contends she was prejudiced by counsel's alleged error because the issue was not preserved for review on direct appeal of her conviction (*id*.).

Respondent concedes that Petitioner exhausted this claim in her Rule 3.850 motion; however, Petitioner failed to show that the state court decision denying her claim was contrary to or an unreasonable application of Supreme Court law (Doc. 7 at 40-43).

1.      Clearly Established Supreme Court Law

The clearly established Supreme Court law applicable to claims of ineffective assistance of counsel is set forth *supra*.

2.      Federal Review of State Court Decision

Petitioner raised this claim in her Rule 3.850 motion (*see* Doc. 7, Ex. J at 7-9).  The state court, citing <u>Strickland</u>, denied Petitioner's claim on the ground that there was no meritorious basis for defense counsel's objection to the prosecutor's closing argument (*id*. at 29-30).

As discussed *supra*, Petitioner has failed to show that the prosecutor's comments during closing argument were improper.  As Petitioner has failed to demonstrate that defense counsel had a meritorious basis for objecting to the comments, Petitioner cannot show that counsel's performance was deficient, or that there is a reasonable probability that the trial court would have sustained an objection to the comments had defense counsel made one.  Furthermore, as discussed *supra*, Petitioner has failed to demonstrate that the prosecutor's allegedly improper comments had "a substantial and injurious effect or influence in determining the jury's verdict."  *See* <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L.Ed. 2d 353 (1993).  Therefore, Petitioner is not entitled to federal habeas relief on this claim.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James Crosby, Jr. as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

At Pensacola, Florida, this  22nd day of March 2006.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).